**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

**CHRISTOPHER ERVIN PAUL LEDET**                    **CIVIL ACTION**

**VERSUS**                                          **NO. 20-1879**

**TERREBONNE PARISH JAIL, et al.**                  **SECTION: "G"(3)**

## ORDER AND REASONS

On July 17, 2020, Plaintiff Christopher Ervin Paul Ledet ("Plaintiff") filed a *pro se* civil action pursuant to 42 U.S.C. § 1983.[1] Plaintiff originally sued multiple defendants including: the Terrebonne Parish Criminal Justice Complex ("TPCJC"); the Terrebonne Parish Sheriff's Office; TPCJC Medical Administrator Richard Petie Neal; the former Warden of TPCJC Stephen Bergeron; the former Sheriff of Terrebonne Parish Jerry Larpenter; and Lieutenant T. Schwaush.[2] Pursuant to Local Rule 73.2, the matter was referred to a Magistrate Judge to prepare a Report and Recommendation. On April 26, 2021, the Court adopted a Partial Report and Recommendation, dismissed the claims against the TPCJC with prejudice, and dismissed the claims against Richard Petie Neal without prejudice.[3] Thereafter, Plaintiff stated that he did not consent to proceed before the Magistrate Judge, and the automatic referral of the case was vacated.[4]

Currently pending before the Court is a Motion for Summary Judgment filed by the remaining Defendants Stephen Bergeron, Jerry Larpenter and T. Schwaush (collectively, "Moving

---

[1] Rec. Doc. 4-1 at 5.

[2] *Id.*

[3] Rec. Doc. 20.

[4] Rec. Doc. 24.

Defendants").[5] Plaintiff has not filed an opposition to the motion, and therefore the motion for summary judgment is deemed to be unopposed. This Court has authority to grant a motion as unopposed, although it not required to do so.[6] Considering the motion, the memorandum in support, the record, and the applicable law, the Court grants the motion.

## I. Background

On July 17, 2020, Plaintiff, a state inmate formerly incarcerated at the TPCJC, filed a *pro se* civil action pursuant to 42 U.S.C. § 1983.[7] In the Complaint Plaintiff alleges that during the COVID-19 pandemic the TPCJC failed to keep inmates quarantined from new inmates.[8] Plaintiff alleges that his dorm became infected and he was put in a medical cell for five days without any medical attention other than temperature checks.[9] Plaintiff's statement of his claim, in its entirety, is as follows:

> Due to the covid-19 epidemic, we was supposed to be quarantined with no new inmates coming in, but were not. Terrebonne Parish did the exact opposite. I was incarcerated before the epidemic housed in C-400. They brought new people in dorm and also a trustee that was kicked off of trustee after moving around the jail freely, that's when our dorm became infected. I was filing emergency grievances that they was denying. They put me in a medical cell for 5 days with no help except temp checks. Shipped me to Angola at Camp J, for 30 days till I tested negative twice. Brought me back and placed me back in the infected dorm.
> I suffered through the symptoms of covid and the jail did not want to deal with me due to staff scared to catch covid-19. They gave me no medication nor provided no medical help except fever checks. They also refused to let me contact family.[10]

---

[5] Rec. Doc. 26.

[6] *Edward H. Bohlin Co. v. Banning Co.,* 6 F.3d 350, 356 (5th Cir. 1993).

[7] Rec. Doc. 4-1 at 5.

[8] *Id.*

[9] *Id.*

[10] *Id.*

Pursuant to Local Rule 73.2, the matter was referred to a Magistrate Judge to prepare a Report and Recommendation. A motion to dismiss was filed by the TPCJC and Richard Petie Neal.[11] Plaintiff did not file an opposition to the motion. On April 26, 2021, the Court adopted a Partial Report and Recommendation, dismissed the claims against the TPCJC with prejudice, and dismissed the claims against Richard Petie Neal without prejudice.[12] Thereafter, Plaintiff stated that he did not consent to proceed before the Magistrate Judge, and the automatic referral of the case was vacated.[13]

On June 22, 2021, a Motion for Summary Judgment filed by the remaining Defendants Stephen Bergeron, Jerry Larpenter and T. Schwaush.[14] The motion was noticed for submission on July 14, 2021.[15] Pursuant to Local Rule 7.5, any opposition to a motion must be filed eight days before the noticed submission date.[16] To date, no opposition has been filed. Therefore, the Court deems the motions to be unopposed.

## II. Parties' Arguments

A.   *Moving Defendants' Arguments in Support of the Motion for Summary Judgment*

Moving Defendants contend that all claims pending against them should be dismissed based on qualified immunity and because Plaintiff cannot show any constitutional violation by

---

[11] Rec. Doc. 13.

[12] Rec. Doc. 20.

[13] Rec. Doc. 24.

[14] Rec. Doc. 26.

[15] Rec. Doc. 26-13.

[16] EDLA Local Rule 7.5.

Moving Defendants.[17] In support of the motion, Moving Defendants offer affidavits of former Warden Bergeron and Medical Administrator Richard Neal.[18] According to Moving Defendants, this evidence shows that "beginning in February of 2020 steps were being taken to familiarize both the Corrections Staff as well as the Medical Staff about COVID-19 issues . . . in order to develop protocols and thus protect the inmate population from the effects of COVID-19."[19] Moving Defendants contend that the steps taken to protect inmates demonstrate that prison officials responded properly to the COVID-19 pandemic.[20] Accordingly, Moving Defendants argue that Plaintiff's allegations, which would suggest a violation of his Eighth Amendment rights, are not well-founded.[21]

According to Moving Defendants, Plaintiff cannot establish a violation of his constitutional rights as to his living conditions, confinement, and medical care.[22] Moving Defendants argue that "the incidence of disease or infections, standing alone, cannot imply unconstitutional conditions, since any densely populated residence may be subject to outbreaks."[23] Moving Defendants contend that their actions were based on ever-changing medical guidance, and cannot be classified as wanton or reckless.[24]

---

[17] Rec. Doc. 26-2 at 1.

[18] Rec. Docs. 26-3, 26-4.

[19] Rec. Doc. 26-2 at 2–3.

[20] *Id.* at 3.

[21] *Id.*

[22] *Id.* at 7.

[23] *Id.* at 9 (quoting *Shepard v. Dallas Cnty.*, 591 F.3d 445, 542 (5th Cir. 2015)).

[24] *Id.*

Finally, Moving Defendants argue that Plaintiff cannot point to any clearly established law to defeat the qualified immunity defense.[25] Moving Defendants assert that their actions clearly demonstrate a continuing effort to combat the elusive virus.[26] Moreover, Moving Defendants assert that responses to Plaintiff's grievances in no way constituted a violation of his constitutional rights.[27]

### B.   *Plaintiff's Arguments in Opposition to the Motion for Summary Judgment*

Plaintiff is proceeding *pro se* and has not filed an opposition to the motion for summary judgment.

### III. Legal Standard

Summary judgment is appropriate when the pleadings, discovery, and affidavits demonstrate "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[28] To decide whether a genuine dispute as to any material fact exists, the court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[29] All reasonable inferences are drawn in favor of the nonmoving party. Yet "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[30] If the entire record "could not lead a rational trier of fact to find for the non-moving party," then

---

[25] *Id.* at 10.

[26] *Id.*

[27] *Id.*

[28] Fed. R. Civ. P. 56(a); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[29] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).

[30] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

no genuine issue of fact exists and, consequently, the moving party is entitled to judgment as a matter of law.[31] The nonmoving party may not rest upon the pleadings.[32] Instead, the nonmoving party must identify specific facts in the record and articulate the precise manner in which that evidence establishes a genuine issue for trial.[33]

The party seeking summary judgment always bears the initial responsibility of showing the basis for its motion and identifying record evidence that demonstrates the absence of a genuine issue of material fact.[34] "To satisfy this burden, the movant may either (1) submit evidentiary documents that negate the existence of some material element of the opponent's claim or defense, or (2) if the crucial issue is one on which the opponent will bear the ultimate burden of proof at trial, demonstrate that the evidence in the record insufficiently supports an essential element of the opponent's claim or defense."[35] If the moving party satisfies its initial burden, the burden shifts to the nonmoving party to "identify specific evidence in the record, and to articulate" precisely how that evidence supports the nonmoving party's claims.[36] The nonmoving party must set forth "specific facts showing the existence of a 'genuine' issue concerning every essential component of its case."[37]

---

[31] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

[32] *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

[33] *See id.*; *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

[34] *Celotex*, 477 U.S. at 323.

[35] *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 190 (5th Cir. 1991) (quoting *Little*, 939 F.2d at 1299).

[36] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994); *see also Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).

[37] *Morris*, 144 F.3d at 380; *see also Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012).

The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence."[38] Moreover, the nonmoving party may not rest upon mere allegations or denials in its pleadings.[39]

### IV. Analysis

Plaintiff claims that Moving Defendants violated his constitutional rights by failing to take appropriate precautions to protect him from COVID-19.[40] Moving Defendants contend that all claims pending against them should be dismissed based on qualified immunity and because Plaintiff cannot show any constitutional violation by Moving Defendants.[41] Plaintiff appears to bring claims against Moving Defendants in both their official and individual capacities.[42] The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[43] The defense of qualified immunity does not apply to official capacity claims.[44] For the reasons discussed below, Plaintiff has not presented any evidence to show a violation of his constitutional rights. Therefore, the Court need not reach the

---

[38] *Little*, 37 F.3d at 1075 (internal citations omitted).

[39] *Morris*, 144 F.3d at 380.

[40] Rec. Doc. 4-1 at 5.

[41] Rec. Doc. 26-2 at 1.

[42] Rec. Doc. 4-1.

[43] *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

[44] *Stallworth v. Slaughter*, 436 F. App'x 337, 340 (5th Cir. 2011) (citing *Turner v. Houma Mun. Fire & Police Civ. Serv. Bd.*, 229 F.3d 478, 483 (5th Cir. 2000)).

issue of qualified immunity as it relates to Plaintiff's claims against moving Defendants in their individual capacities.

The Due Process Clause and Eighth Amendment require prison officials "to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm, during their confinement."[45] A condition of confinement claim is "a challenge to general conditions, practices, rules, or restrictions of pretrial confinement."[46] "To establish a failure-to-protect claim under § 1983, [a prisoner] must show that he was incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection."[47]

As the Fifth Circuit has recognized, "[t]here is no doubt that infectious diseases generally and COVID-19 specifically can pose a risk of serious or fatal harm to prison inmates."[48] It is undisputed that Plaintiff contracted COVID-19 while incarcerated at the TPCJC. Moving Defendants do not dispute that COVID-19 posed a substantial risk of serious harm to Plaintiff. Therefore, the first element of Plaintiff's claim is satisfied.

However, Plaintiff must also establish that Moving Defendants were deliberately indifferent to his needs. A showing of deliberate indifference requires that "the state official must know of and disregard an excessive risk to inmate health or safety" and must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and

---

[45] *Hare v. City of Corinth*, 74 F.3d 633, 650 (5th Cir. 1996).

[46] *Est. of Henson v. Wichita Cnty.*, 795 F.3d 456, 463 (5th Cir. 2015) (quoting *Hare*, 74 F.3d at 644) (internal quotation marks omitted).

[47] *Neals v. Norwood*, 59 F.3d 530, 533 (5th Cir. 1995) (internal citation omitted).

[48] *Valentine v. Collier*, 956 F.3d 797, 801 (5th Cir. 2020).

he must also draw the inference."[49] The Fifth Circuit has consistently held that "[a]ctions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference."[50] Rather, deliberate indifference requires official action more akin to recklessness or the wanton infliction of pain.[51] Therefore, "deliberate indifference is an extremely high standard to meet."[52]

Moving Defendants have presented evidence to show that measures were taken to protect TPCJC inmates from COVID-19. Moving Defendants present the affidavit of Defendant Stephen Bergeron, who stated that he "was at all relevant times herein in charge of the facility to ensure that all policies and procedures for the operation of the facility were followed, that the safety and security for employees as well as inmates were provided for, and that inmates receive all constitutional guarantees that they are entitled to within the law."[53] According to Defendant Bergeron's affidavit, the facility "encouraged the frequent washing of hands and increased the areas of cleaning within the facility for employees, visitors, and inmates."[54] Defendant Bergeron attests that temperature checks were instituted and "all public visits for inmates ceased with only attorney/inmate visits allowed."[55] According to Defendant Bergeron's affidavit:

---

[49] *Est. of Henson*, 795 F.3d at 464 (internal citations and quotation marks omitted).

[50] *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 420 (5th Cir. 2017) (citing *Alton v. Tex. A & M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999)).

[51] *Id.* (citing *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)).

[52] *Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001).

[53] Rec. Doc. 26-3 at 1.

[54] *Id.* at 2.

[55] *Id.*

> During the month April 2020, the DOC ordered that all inmates in the TPCJC who tested positive for COVID-19 were to be sent to the Louisiana State Penitentiary at Angola. Plaintiff Ledet was one of the first inmates from the TPCJC who were sent to Angola as he had tested positive for COVID-19. Plaintiff Ledet, when he tested positive for COVID-19 on April 20, 2020, was placed in medical cell six (6), thus quarantined. It should also be noted that medical cell six (6) is right next door to the medical department. While in that medical cell he received appropriate medical care and treatment as well as all meals. That [c]ell also had its own shower, toilet, and television. When removed from medical cell six (6) on April 28, 2020, Plaintiff Ledet was then shipped to Angola State Penitentiary for thirty (30) days. After testing negative for the virus two (2) times, he, Ledet, was returned to Terrebonne Parish at the TPCJC to continue serving his sentence on or about May 27, 2020.[56]

Defendant Bergeron attests that beginning in April 2020 all staff and inmates were required to wear masks, and from April 2020 through May 2021, decontamination spraying occurred for the entire facility.[57] According to the affidavit, "all known and suggested procedures to prevent the exposure and prevention of the spread of COVID-19, within the prison setting of the TPCJC, were taken based upon the best recommendations of the CDC, DOC, the Governor of the State of Louisiana, Louisiana Department of Health and Hospitals, as well as the Louisiana Sheriff's Association."[58]

To avoid summary judgment, Plaintiff must "show that there is a genuine dispute of material fact and that a jury could return a verdict entitling [him] to relief for a constitutional injury."[59] Plaintiff has failed to respond to the motion for summary judgment, and therefore has not put any facts into dispute. Plaintiff presents no evidence to show that Moving Defendants acted

---

[56] *Id.*

[57] *Id.* at 3.

[58] *Id.*

[59] *Est. of Joseph v. Bartlett*, 981 F.3d 319, 330 (5th Cir. 2020).

with deliberate indifference to Plaintiff's needs. Accordingly, Moving Defendants are entitled to judgment as a matter of law.

Plaintiff also claims that he submitted "emergency grievances" that Moving Defendants denied.[60] Even accepting this allegation as true, it cannot be the basis of liability because "[a] prisoner does not have a constitutionally protected liberty interest in having 'grievances resolved to his satisfaction.'"[61] Therefore, Moving Defendants are entitled to summary judgment on this claim.

Plaintiff also claims that Defendants refused to let him contact his family.[62] Moving Defendants respond that Plaintiff had access to a telephone at all times, except during his eight-day quarantine in medical cell six.[63] Again, Plaintiff has failed to respond to the motion for summary judgment or put any fact into dispute. Plaintiff has not shown that Moving Defendants violated his constitutional rights by failing to provide him with access to a phone while he was quarantined. Accordingly, Moving Defendants are entitled to judgment as a matter of law.

To the extent Plaintiff brings a separate claim against the Terrebonne Parish Sheriff's Office, courts have recognized that "although a sheriff's office is not a legal entity capable of being sued, Louisiana sheriffs are amenable to suit.'"[64] Here, Plaintiff sues both the Terrebonne Parish Sheriff's Office and former Sheriff Jerry Larpenter. Any claim against the "sheriff's office" is

---

[60] Rec. Doc. 4-1 at 5.

[61] *Bonneville v. Basse*, 536 F. App'x 502, 503 (5th Cir. 2013) (citing *Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005)).

[62] Rec. Doc. 4-1 at 5.

[63] Rec. Doc. 26-2 at 5.

[64] *Cozzo v. Tangipahoa Par. Council-President Gov't*, 279 F.3d 273, 283 (5th Cir. 2002).

more properly brought against the sheriff in his official capacity. As discussed above, former Sheriff Larpenter is entitled to judgment as a matter of law. Therefore, Plaintiff's claims against the Terrebonne Parish Sheriff's Office also must be dismissed.

## V. Conclusion

For the reasons discussed above, Plaintiff has not presented any evidence to show a violation of his constitutional rights by Moving Defendants. Therefore, Moving Defendants are entitled to judgment as a matter of law.

**IT IS HEREBY ORDERED** that the motion for summary judgment filed by Defendants Stephen Bergeron, Jerry Larpenter and T. Schwaush[65] is **GRANTED**.

**IT IS FURTHER ORDERED** that the claims against the Terrebonne Parish Sheriff's Office, Stephen Bergeron, Jerry Larpenter and T. Schwaush are **DISMISSED WITH PREJUDICE**.

**NEW ORLEANS, LOUISIANA,** this 18th day of October, 2021.

_____
**NANNETTE JOLIVETTE BROWN
CHIEF JUDGE
UNITED STATES DISTRICT COURT**

---

[65] Rec. Doc. 26.